First case this morning is case number 516-0246, Spenner v. State Farm Fire & Casualty. Counsel for the appellant, you may proceed. State your name for the record, please. Thank you, Router. My name is Mike Podeski, and I'm representing State Farm in this case as the appellant. This case, Router, involves a personal liability umbrella policy. It's a true excess liability policy. It requires minimum underlying limits for automobiles of $250,000, $300,000. It's very different from a primary automobile policy. The purpose of the policy at issue today is to provide an extra level of liability coverage, and that's all it provides is liability coverage. Again, very different from a primary auto policy. For that reason, the terms of this policy are not governed by the Motor Vehicle Code as they are in a primary auto policy. And we cited the Cope and the Hartbarger case out of this appellate court for the proposition that umbrella coverage is fundamentally different from primary policies, and it just is. Just for an example, if you look over the policy, it's pretty short, very brief. There's no uninsured motorist. There's no underinsured motorist. There's no med pay provided in the policy. And most critical here, Your Honors, there is no omnibus clause. There is no permissive use even mentioned anywhere in this policy. There's no exclusion for non-permissive use of a vehicle. Again, strikingly different than a primary auto policy because in a primary policy, as we all know, there has to be an omnibus clause. If you give your vehicle to a neighbor or a friend and they need to run an errand, they're going to be covered under your primary policy because, again, it's the policy in the state of Illinois that all vehicles have primary coverage in case there's an accident. But again, this is a true access policy, and there's no omnibus clause there. The whole issue of permissive use is not even mentioned anywhere in this policy. Had this accident occurred with Carolyn's car and Carolyn in the car, would her umbrella policy have covered that instance? Well, if Carolyn was sued, yeah, she would be covered. Yeah, so if Carolyn were at fault and it was Carolyn's car and Carolyn was the driver, even though you're arguing about this liability-liability policy, this umbrella policy would have covered her. Right, because Carolyn is the named insured. So isn't the issue whether this policy covers the named insured? She was an owner of the vehicle at issue here, the Mustang, right? Well, yeah, you can certainly argue that she was on the title of the Mustang. Sure, and it makes her an owner. Oh, yeah, I mean, Carolyn's name, there's no question, but if she gets sued in a number of different scenarios, she's going to be covered because in this particular policy, Your Honor, coverage follows the insured. It does not follow the auto. Again, very different from a primary policy. Primary policy, coverage follows the auto, no matter who's using it. Anybody with permission or any apparent permission, they're going to be covered. The only way to find out who is covered under this policy... I'm interested in your statement, coverage follows the insured. Yes. Okay, but the insured here is Carolyn. Right. Her name is on the title of the vehicle. Okay. So I'm interested, though, in the fact that there were these obligations to carry a 250-500. Right. How does that play into this? Assume that there wasn't coverage as an insured. Do you think the 250-500 is a deal breaker? In other words, the fact that the Mustang didn't have that means there's no coverage here? No, that's not a deal breaker. That doesn't preclude coverage. As a practical matter, what it does is this, Judge, there's whatever is $130,000 gap between, I guess it's $230,000, I'm sorry, between the 2040 limits on that Mustang and when this coverage applies at 250. So what it does is, I mean, again, it's not a deal breaker. It doesn't exclude coverage. It's just, it provides a gap. Okay, that's kind of what that is. Okay. So like I was saying, coverage follows the person, not the car. That's opposite of a primary policy situation where the coverage follows the automobile. In fact, the deck sheet here, which is at C-80, it lists no automobiles. It just gives the named insured, Carolyn, and the minimum limits of the underlying coverages. So how do you determine who's an insured under this policy? Because again, we're talking about Spenner or his estate would be considered an insured under the policy. There's only one way to determine that, and that's going to the definition section of the policy that defines who is an insured. Well, the liability umbrella coverage endorsement is at C-84 in the record. That defines the insured as the named insured, resident relatives, other persons under 21 in the named insured or resident. So basically, resident relatives and then someone under 21 who's under the care of the person that lives in the house. Persons or organizations for vicarious liability to the other named insureds or the residents. There's also provisions for a partnership or a corporation if that's the named insured. So that's the only way to determine whether or not there's going to be coverage for somebody. They have to come within the definition of whether they're a named insured. It's not a permissive use situation. And just to give you an example, if Carolyn lent her vehicle to a neighbor and the neighbor went, you know, needed to get something from the grocery store and got into an accident. Well, the coverage, the primary coverage, the $255,000 would apply to the neighbor to provide liability coverage. But the umbrella would not apply to the neighbor because the neighbor is not a resident relative. The neighbor is not the named insured. Again, it doesn't come within the definition of who is an insured. Again, there is no omnibus clause, no permissive use discussed in this policy whatsoever. The facts here are basically undisputed. It's a question of law for the court and it is a review on interpretation of this policy. It seems, I'm sorry again, but this was granted on a summary judgment basis. Judgment on the pleadings. Judgment on the pleadings. And the other thing that you haven't discussed yet, maybe you're getting to it, is the obligation to defend. I mean, it seems... State farms are defending on our reservation currently. They are? Yes, on the underlying case. And do you believe that there's no ambiguity that the issue here is so clear that this court can rule as a matter of law? Yes, Your Honor. Yes. Carol Spenner resides in Boylton, Illinois. She lives with her grandson, Scott. Carol has a primary policy. Two vehicles are on it, 250, 500 limits. Scott, again, Scott Spenner, he's got an automobile. Again, he's got his own policy, 250, 500 limits. Brian Spenner, who is the defendant in the underlying case where his estate is, he was in active duty in the Army at Fort Riley, Kansas. He had a Mustang and his deck sheet is listed at the record C-351. The address on the deck sheet is Junction City, Kansas. The liability numbers on the Mustang, and the Mustang was involved in this accident, is 20-40. Also, it's been stipulated he also has a residence in Centralia, Illinois. It's undisputed that Brian at no time resided with Carolyn, so he is not a resident relative, although he is the grandson of Carolyn, as is Scott. So the accident occurred, Brian is driving the Mustang that carried the 20-40 limits, one car accident. Brian died, Scott was injured. Scott assumes Brian's estate. So the question, and the only question, is, is there liability coverage for Brian under the umbrella policy? Now, at first blush, it's pretty clear, at first blush, well, there's no coverage. There couldn't be any coverage, because Brian is not the name insured, and he's not a resident relative. He's not the spouse of his grandma. So he's not defined as an insured under this policy. So how could he be covered? But the argument was made to the trial court, successfully by Scott, that, well, you need to construe the policy as a whole. We just can't look at the definition section. You need to consider a couple different things. There's this exception to an exclusion, number 13, and then also there's a section of the insurance code, section 143.01b, and the court relied on that statute in reaching its decision. So what the court did was it looked at this statute and said, well, there is coverage here, looking at the statute that applies. And what's wrong with that argument, the statutory argument? Right. Well, it's our position that's an unreasonable reading for several reasons, that when the court looked at that statute, it's our position that statute does not apply to an umbrella policy to begin with. Do you believe that the court can look to statutory authority for guidance in construing the contract? Primary policies, yes. This one, no. Because it's an umbrella policy. Yes. Very different animal. Go ahead. Didn't Judge Brandmeier rely on that statute in his order? Yes. He cited the statute right in his order, 143.01b of the insurance code. So my question in follow-up to Justice Moore is, Justice Carmeier in Schultz v. Illinois Farmers Insurance Company also looked to a statute in order to assist in the determination of a policy. That was a primary case, primary policy, right. So is that how you would distinguish the Schultz case? Yes, absolutely. That's the only distinguishing factor is that it is an umbrella. Well, no question about it, Your Honor, because again, I mean, Justice Carmeier laid out in great detail how these policies are, coverages are inextricably intertwined, UIM liability. That all has to apply in a primary policy. There's no question about it. I mean, very clear. That's required in the state of Illinois. This is an excess policy. It's not a primary policy. It doesn't have any of those coverages other than liability. Well, what I was getting to, though, is it's clear that the court can look to the statute. A court can rely on a statute in assisting itself in determination of the meaning of the insurance policy. Your argument is that Judge Brandemeier just did it incorrectly. Well, I think what I'm saying is the point of construction of the policy, it should have a reasonable construction. What I'm saying is looking at the statute and arriving at this conclusion is just not a reasonable interpretation of the policy. The court can rely on a lot of different things. Black's Law Dictionary cases can look at the statute. I mean, you can't say that the court shouldn't look at a particular statute, but our position is the statute isn't relevant here because it is an umbrella coverage. And number two, when you look at the statute and rely on that to find coverage, you reach an unreasonable interpretation. That's basically our position here is it's an unreasonable interpretation given the fact we're talking about an umbrella coverage, not primary coverage, because that statute is designed to apply to primary policies. And the other thing, too, and I haven't mentioned this yet, is that statute talks about invalidating an exclusion. That's what that statute does. It's the family member exclusion. There's no exclusion at issue in the case. I mean, our position is Brian just does not qualify as an insurer. State Farm is not taking this coverage position and there's an exclusion that precludes Brian from coverage. That statute invalidates an exclusion. There's no exclusion at issue. Yes, Your Honor. Excuse me, counsel. Would it be fair to say that your argument is simply this, that we look to the policy and all we need to look at is the definition of insured. There's nothing else in the policy we need to look at that explains it. Is that your position? Absolutely. Because when you do, as I'll explain in a minute here, when you do this other exercise, you look to an exception to an exclusion, first of all, there's all kinds of cases that say that's not what you do to try to find coverage. The second thing is, again, there is no, the statute that the court relied on, again, it invalidates an exclusion. That's the purpose of the statute. There is no exclusion that we're relying, there's no exclusion at issue is what I'm trying to say. All we're saying is Brian just doesn't qualify because he doesn't come within the definition of who's insured under this excess policy. Now, for example, if we were raising exclusion, yeah, maybe they'd have an argument there, but we're not relying on an exclusion here. So this statute doesn't even, it's just on its face it doesn't apply because it's not an exclusion to begin with. Now, what our position here is, Your Honors, is that the trial court error because ultimately you reach an unreasonable interpretation of the policy. And it's unreasonable for several reasons. And the argument, and I understand the position that Scott was making here, you know, policy should be construed as a whole. But the problem with that is that doesn't mean you should ignore every other rule of policy construction. And to give meaning to all parts of the policy doesn't mean the court should just redraft the policy to reach the desired result. And that's basically what happened here. Again, like I mentioned a minute ago, an exclusion is relevant only when the policy provides coverage in the first place. Okay? And that's the Hartbarger case out of this 5th District. So you only come to an exclusion when you have coverage. So the coverage is provided here in the definition section, who is an insurer. Then you go to see, well, is there an exclusion that could apply that takes away coverage? Then the next step is, is there an exception to an exclusion which could then return coverage that originally existed? That's the exercise. Insurance policies are so amazing. Let me ask you this, if I could. Do you, or has there been any allegation that the, what's her name, Carol? Has any liability in this case? She was not and I don't know if she were named in the litigation as having any potential liability. You agree she would be covered? Absolutely. Okay. The statute ran by the way, but anyway. I understand. But even though there's this disparity that I was worried about, she would be covered for this car? Yes. Oh yeah. Okay. Can I dive? So in your reliance on case law, do you believe that the, I'm not going to pronounce it right, but the Mee-Pang case is more aligned to your position? Yeah. I mean, in my opinion, discussed, I think it's Mee-Pang anyway. I think it's an underinsured motorist claim or an underinsured policy. Yes. Yes. And that's what we're dealing with here. Very different animal than a primary. That's the whole point of this. And just for the record, we're talking about the M-E-I-P-A-N-G case that you cited. Okay. Right. And actually this court had, out of this court, there was a, I think the Hart-Marger case. I apologize for that. That might've been an umbrella with the B-Y-M, a little older decision. But the point is an acceptance to an exclusion does not create coverage or provide an additional basis for coverage. It only preserves the coverage granted in the insuring agreement. So again, we have, is there coverage to begin with? Who is an insured under the policy? Then if they are insured, is there an exclusion that takes away a certain coverage? The acceptance of exclusion just returns the coverage that originally existed. But again, there's no exclusion at issue here. What the trial court relied on, that section 143.01B, invalidates a household member exclusion. The exclusion recruited liability coverage to an insured's family members even when a permissive driver operated the insured's vehicle. And again, that works on one level because when we're dealing with primary policies, the other person would have coverage as well because everybody's supposed to have coverage otherwise it becomes an uninsured motorist claim. And we decided to build a kind of case for an explanation of that. That was an Illinois Supreme Court case that basically said, you know, if the coverage is not there to begin with, you don't even reach the exclusion. You don't reach the section 143.01 analysis because the plaintiff in that case was trying to get that section just isn't relevant here because the vehicle at issue just was not an uninsured or an underinsured vehicle. So basically that public comment case, Illinois Supreme Court says, unless you're relying on an exclusion, section 143.01 does not even apply because that again, that section of the insurance code invalidates an exclusion. We're not talking about any exclusion here. The word is not. Now, what was the big argument that was made, accepted by the trial court was that it's an exception to exclusion 13. Okay. So what was the purpose of the exclusion if it wasn't to expand the coverage? What was it? Why have it? Well, supposedly, theoretically, would deny collusion if one insured person is suing another insured person. In other words, if Scott is suing his grandmother, the exclusion would apply to deny coverage in that situation. Again, this is liability coverage. And the concern is that, you know, since these people are in the family, they live together, it's a $2 million limit. Well, maybe there could potentially, in some theoretical sense, could potentially be collusion there. So let me ask this very carefully. So I want to make sure the wording is correct. My question, doesn't the language allow a non-household driver to become an insured when that driver's operation of an insured motor vehicle causes a damage for which the insured is liable? No. This policy does not create liability coverage for third parties. It does not apply because the point of this exception to the exclusion applies, for example, in a negligent entrustment situation. A third party's driving the vehicle. Caroline entrusts her Buick to, let's say, to Brian. Sorry. The purpose of the exception to the exclusion has existed before. So you don't have a situation where coverage wouldn't be excluded if Scott was suing his grandmother, Caroline. Okay? It does not create a new definition of insured. It does not create a new class of insureds. That interpretation... You'll have an opportunity for a rebuttal, Counsel. Okay. Counsel Fuller, I believe. May it please the Court, Counsel. My name is Ryan Rich. I'm here on behalf of Scott Spinner, the appellee in this case. This is my first time here at the appellate court. Welcome. Welcome. Thank you. It's an honor. I want to begin by addressing a few things of what Stefan has addressed here today. One of the first things, and what they started with, is that there is no omnibus clause in this umbrella policy. And he stated that the insurance does not follow the vehicle. I believe, in reading the policy, that there is an omnibus provision in that narrow and limited circumstance in the exception to exclusion 13. That's kind of a following form of how you cover it. It's found within that. Mr. Podesta. You think the exclusion clause does enlarge the policy? I definitely believe it does. Can you transform an umbrella policy into a liability policy, like an auto policy? I mean, his big distinction is the fact that we have an umbrella policy versus the standard auto policy. And I agree with you, Your Honor. And that distinction that he is making comes from the underinsured motorist statute. And in the underinsured motorist statute, it specifically states that the underinsured statute, or uninsured statute, is not mandatory in umbrella policies, but it can be permissive. There's no such safe harbor provision in 143.01b. That is a mandatory insurance law that speaks to policies of vehicle insurance. And we've cited in our brief what is defined as vehicle insurance. And this is a policy of vehicle insurance. And whether or not it's mandatory or not, Justice, is really irrelevant in this case, because they chose to include the provision that mirrored the statute. So whether or not they had to do it, doesn't matter. They put it in there. They put in 143.01b. That is correct. And what State Farm has said, and it kind of reversed course here in the reply brief, is it said that, you know, this doesn't ever even apply to us. But if you look at their prior positions in this, they've said that the exception to exclusion 13 is the embodiment of 143.01b. And that's directed at C-423. It's at C-174. And then it's also on page 11 of their first brief. And so whether or not they had to do it, it does not matter, because they chose to put it in there. And so when you look at the purpose of 143.01b, it's so that insurers cannot force the permissive driver's insurer to be the sole coverage for the license. And that comes from the Bill of Conduct case. And that's exactly what State Farm is trying to do here. In reaching this result, they violate nearly every rule of policy construction. You know, in Haas, the Supreme Court stated that when curtailing a policy, the court's primary objective is to find the intent of the parties. And the intent is best found in the language of the policy itself. But you agree you read the policy as a whole. Absolutely. You need to read it as a whole and not in isolated parts. And that's where State Farm's policy, or their interpretation, fails on this. And they state time and time again, just look at the definition of insurer and stop there. That's not what the rules require. You have to look at everything as a whole. And when you get to the exception to exclusion 13, the facts of this case fall squarely within to that exception. You have Scott Spinner, who is admittedly an insurer, who was injured when his brother, a non-household member, was driving the vehicle of the named insurer, which is Carolyn Spinner, who is a title owner of the vehicle. Now, in the briefing today, State Farm has repeatedly tried to bring up extraneous facts outside of the policy in order to find coverage here. For example, they've alleged that the vehicle was not garaged at Carolyn Spinner's house. It was garaged in Kansas. Where the vehicle was garaged is nowhere in the record. We further dispute that it wasn't garaged at Carolyn Spinner's house. But even if you put all that aside, where in the policy does the location of where the vehicle was garaged? So my question to you is the same as it was to Mr. Rudetsky. Are you asking this court to reverse or you're asking to affirm? But do you believe this court could reverse because there are questions of fact here? I mean, when you start talking about where our car is garaged, that's an issue of fact. That's not an issue of law. So could it be that this court could reverse, find a duty to defend, and let the parties get some more facts out here? Is that an alternative? I don't believe so. So you believe it's a question of law that should be decided? Purely a question of law. Okay. So the facts of where a car is garaged really don't matter here necessarily. Well, State Farm had the option to you know, they also had an option to put in there that the name insured must purchase the underlying policy of vehicle insurance. That's not right in there. Or that Carolyn Spinner had to pay for the insurance. That's not in there. And they've addressed this gap issue where they're reporting to show that because there's this gap, there's a void in coverage. There's a whole section of this umbrella policy devoted to where is this gap in coverage. And there is not a provision in there that says that the policy is invalidated because of the gap. And in fact, if you look at the granting clause in this policy, the policy only applies when damages exceed the retained limit. So in order to trigger coverage under this policy, the damages have to be above the 250. So it's irrelevant how much coverage is underneath. The exposure to State Farm under the policy is the same. And so what this really, this case really has two folds. One, you have the strict policy interpretation. And two, you have the claim under 14301B that the statute prohibits State Farm from excluding coverage here. And so when we compare the exclusion, the exception to exclusion 13 with the definition of insured, there's a conflict that's created. Because as Mr. Podesta discussed, in order to be an insured for automobile liability, you have to be a household member. But then the exception to exclusion 13 purports to only apply to a non-household driver. So how do you reconcile the two? If there's a conflict, the policy is deemed ambiguous. And what the trial court did, they reconciled the two provisions by stating in the very narrow and limited circumstance defined in the exception to 13, that non-household driver is deemed an insured. It's a very narrow, very small window in which you're expanding the definition of insured. And I think it's important to know that this exception came through an initial policy. So the policy had an initial version, and then State Farm came in and changed it. And they changed to specifically include this exception. And at the same time, they should have changed the definition of insured to include the small, narrow, limited circumstance. Okay. Could you be much more specific on that? Specific. You're talking about circumstance. You're talking about the policy. Tell me the please. In the exception to exclusion 13, it states that a non-household, that bodily injury... Let me strike that back up for a second. Do you know what paragraph you're talking about? The exception to exclusion 13. Okay. Yes. And so there's... I'm looking at it, so I'm wondering if... I want to make sure I'm on the right page. Yes, yes, yes, yes. The exception, it excludes bodily injuries to members of the family, except when relating to the ownership, maintenance, or use of any vehicle. When a non-household member is operating the vehicle of the name insured that causes the injury to the insured. And so when you look at that provision specifically, and then you compare that with the definition of insured, when they endorsed this policy, they also included some corporations and farm liability people, non-auto type of people also within the definition of insured. They could have just as easily included these non-household drivers in a limited circumstance where they're operating the vehicle of the name insured that causes injury to an insured. But they didn't do so. And they shouldn't be now allowed to shirk the responsibilities of the policy because they failed to endorse their definition section of insured so that the policy can be read as a whole and consistently throughout. And that's where the conflict arises. What if they take the position that we didn't have to do that because it's clear in the definition section? Isn't that his argument, that it's clear in the definition section that this gentleman wasn't uninsured? So why would we put that in the exclusion section? If it's clear that it's in the definition, that's where the conflict arises. And maybe I don't fully understand your question, if that's the case. Could be. And this kind of goes back to the fundamental basics of how a policy is set up. So in every policy, you're going to have a granting clause. There has to be a grant of coverage that tells you what this policy covers. In this case, it's a liability policy for damages above $250,000. So any first party claim, any med pay, things like that are excluded. And so then you get here, and I think this is helpful for me, at least to kind of visualize this. And I think it was helpful for the trial court. So you have, let's say these matters aren't within the original scope of coverage. Over here, you have scope of coverage. This is what's applied. But we're giving you too much coverage. Under that scope of coverage, we want to exclude a number of items. So we're going to take that out, and we're going to put it over here in the exclude pile. But if the company paints the exclusions with too broad of a brush, it says, wait a second, we didn't mean to exclude all that. We're going to take one of the things we excluded and put it back in the pile that was covered. And so at all times, in order to get the exception to apply, it had to have been granted in the granting clause. And this is what the court was talking about in landmark, that the exception to the exclusion should inform the court of the initial scope of coverage. And so if it was not within the initial scope of coverage, why make an exception to an exclusion if it was never covered in the first place? And as the Rich v. DeProdigio case stated, that would make any such provision superfluous. And so when you look at this, what State Farm is asking this court to do is to look at this policy, only look at the definition of maturity, find that this exclusion 13 has no meaning, no force and effect, and it's just put in there. But you can never get to that exception to the exclusion unless the insured definition also is expanded to include a non-household member. So it's your position that every time there's an exclusion in an insurance policy, it's because the grant of coverage was broad enough that the company had to make sure that it was clear what it was taking away? Yes. Anytime there's exception to exclusion. So for example, when they excluded accidents arising out of a railroad or a nuclear reaction, those would have been in the grant of coverage, but they had to be sure to take them away? Correct. The next issue that we would like to discuss is going back to the statute again, 143.01B. In the legislature, an act of this statute would say that the company used a provision to exclude coverage for bodily injury to an insured by a non-household member who's operating the vehicles in the industry. They're prohibited from doing so. And State Farm takes the position that, well, we're not using an exclusion to get rid of coverage, so this statute doesn't apply. Well, that's kind of a misnomer, because if you read the statute, it says that a company may not utilize a provision in a policy of insurance. And they're utilizing the definition of insurance to exclude coverage for Scott Spinner in this case, or to exclude liability coverage for Brian Spinner, which would in turn give bodily injury coverage to Scott Spinner. And there's an interesting part to the Schultz case. It said, you know, a company can't just insert a provision into a policy in order to comply with the statute, but then make it impossible to ever reach the exception through a different version of the policy. And so that's exactly what State Farm's trying to do here. They're saying, you know, we're not excluding coverage. You never get to coverage in the first place. Well, they're doing the exact same thing that they're not allowed to do with the definition. And Schultz has rejected that sort of position. What about counsel's argument that this is an umbrella and is different in the vehicle code and that 143.01 applies to the vehicle code? I wholly agree with counsel's argument that umbrella policies are different animals. In all the cases that to that point stem from the uninsured motorist statute, where there is a safe harbor provision that specifically addresses that you do not have to provide uninsured motorists as part of an umbrella. There is no such safe harbor provision in 143.01B. And in fact, that statute applies specifically to vehicle insurance. And the legislature has defined vehicle insurance very broadly. And that encompasses, it's even gone as far as in the case of the Pell, I think it's the Bettman case, that vehicle insurance can include a homeowner's policy. If you deal with vehicle liability of some sort, and those came out of lawnmower type of cases. So this vehicle insurance is a very broad concept. And there is no safe harbor provision that says that an umbrella policy is exempt from the constructs of 143.01B. I'd also like to address the MyPayne case, the justice case referenced earlier too. And MyPayne also addressed the uninsured motorist policy, and they found that uninsured was not mandatory in an umbrella. What MyPayne also said is that there is not a mandatory insurance law that requires an umbrella policy to provide this coverage. That's different than what we have here, because there is a mandatory insurance law, and it's 143.01B. But as I stated earlier, it doesn't matter whether or not it's mandatory, because they put the provision into the policy. This argument is really a red herring over whether or not the statute applies, because they put the provision that they claim embodies the statute into the policy. And where is that placed into the policy? And that's in the exception to the exclusion of 13. So that, you believe 143.01 is embodied in the language of the exclusion specifically? Absolutely, and that's what State Farm said throughout this case. You know, State Farm has specifically modified its policy to provide this exception to the statute. Now, come up with these after-the-fact bases to come up with reasons why they shouldn't have to apply their policy. They put it in there. These facts fall squarely within the coverage that they've had. It conflicts with their definition of insured, and as the trial court correctly found, there's only one way to reconcile that conflict, and that's to find in the narrow and limited circumstance that Brian Spinner is to be deemed an insured, because he was operating a vehicle of the name insured. She was the owner of the vehicle that caused injury to a name insured. And with that, I'll rest. Thank you. Thank you, counsel. The point of the exception to exclusion 13 that's been discussed, again, like I said before, it applies to a negligent entrustment scenario. If Carolyn entrusts her Buick to Brian and Scott is injured, Carolyn is covered if Scott sues her. Another example, Carolyn lends her car to a neighbor and Scott is injured in a motor vehicle accident, Carolyn would be covered if Scott sued her for negligent entrustment. So that's an example, reasonable interpretation of the point of this exception to the exclusion 13. The point I want to make... Did you use the word negligent entrustment in that exception? Yeah, right. That would be covered for a negligent entrustment theory. Here's the point I'm trying to make here. The interpretation that's urged by the affiliate here, we're talking about a narrow limited circumstances, absolutely not. If this court were to affirm, that means that any person not in the household of the name insured driving the vehicle of the name insured, they're entitled to coverage. That means everybody in the world is covered because, hey, the name insured is covered, resident relatives are covered, anybody not in the household of the name insured, this completely redrafts the definition of who is an insured in the policy. That's where you end up if you accept Scott's position here. Again, a new class of persons, through an exception to an exclusion, now we're creating a completely new class of persons who would be insured. And what does that mean? A thief or a carjacker would be owed coverage under this policy. How can I say that? There's no exclusion for non-permissive use. There's no omnibus clause. There's no exclusion that says someone without a legal basis to drive a car wouldn't have coverage. A thief would be covered, theoretically would be covered here. This opens up, this completely redrafts what was supposed to be limited tailored coverage to designated insureds. Again, the policy that the coverage follows the insured, not the vehicle. Now we have the vehicle, the coverage follows the vehicle, not the insured. We have a complete reversal of what this policy is. That's where you get, this isn't any limited circumstance. This blows the whole thing wide open and redrafts the definition of who is an insured. That's what you get. The trial court found that any person not in the household, which was this gentleman, Brian, of the named insured, which was Carol, was driving the vehicle of the named insured, her name was on the title, involved in the accident, which is the subject of the claim. Now, the trial court says that that exclusion does not apply when those circumstances occur. What's wrong with that order? The trial court found that there was coverage and duty to defend the state. This means that the exclusion I just read to you does not apply, the trial court said, when any person not in the household of the named insured was driving the vehicle of the named insured, involved in the accident, which is the subject of the claim. Why is Judge Brandemeier wrong on that? Because he said the exception to the exclusion applies. The exclusion doesn't apply. It does not apply. He says it does not apply in paragraph four. Well, he found that there was a duty to defend Brian, which means that Brian, ultimately what it means is a person not in the household of the named insured driving the vehicle is given coverage. I mean, I know he wrote, and it's correct what he wrote, but that's what he did. He said there's a duty to defend. That was the order, judging in favor of Scott here, founding that coverage is owed to Brian's estate for the case. Now, maybe the language wasn't 100% clear, but what he did, what he did in the order was finding that coverage was owed. What that means is he found coverage for a person who was driving the vehicle that's not in the named insured's household, which is Brian. So that's what, I mean, that was the effect of the order, that there's a duty to defend here. So that's ultimately the interpretation that was adopted by the trial court, or maybe it was, the order wasn't actually drafted, what have you, I don't know. But the point is, that's where you end up. You end up with everyone in the world is owed coverage, even a thief, even a carjacker, because they're insured. They're not in the household and they're insured. It completely redrafts the policy and that's- Well, the limitation is that the vehicle has to be in a named insured's name. Well, yeah. There's still a limitation, so it doesn't open it up to the whole world. I mean, to a burglar who- If she's driving Carolyn's car, sure, or he's driving Carolyn's car, sure, that's her car. And he's in an accident. Yes, he would be owed liability coverage, or she would be owed liability, absolutely. Then there would be coverage for the burglar who goes out and get an accident. Absolutely. Why isn't that a good umbrella policy? It protects her. Well, the point is, you're paying for, and the premium is based on a limited number of people. People in the household, you're not buying a general or a primary policy where coverage is designed to cover everybody who drives the car. This is narrowly tailored umbrella coverage. You're not paying for a burglar. Thank you, counsel. The court will take this matter under advisement and issue a disposition in due course.